Alvin SILBAUGH, Jr., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Kroger Co., Intervenor.

No. 23478.

United States Court of Appeals, District of Columbia Circuit.

Argued June 15, 1970.

Decided Aug. 5, 1970.

Mr. James C. Paradise, Cincinnati, Ohio, for petitioner.

Mr. Warren Davison, Attorney, National Labor Relations Board, for respondent. Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Robert A. Giannasi, Attorney, National Labor Relations Board, were on the brief for respondent.

Messrs. George A. Leonard, Cincinnati, Ohio, Edward E. Wall, Cincinnati, Ohio, and George F. Lynch, Cleveland, Ohio, were on the brief for intervenor.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges.

FAHY, Senior Circuit Judge:

The Labor Board, with two of its members in dissent, agreed with the Trial Examiner and dismissed a complaint charging Intervenor, the Kroger Company (Cleveland Division), with violating Sections 8(a)(1) [1] and 8(a)(3) [2] of the Labor Act. The complaint alleged the Company had discharged eight and had disciplined 165 other employees for participating in a strike against the Company in May, 1967. One of the eight discharged employees is our petitioner.

The parties appear to agree generally that a strike in violation of a union's commitment to an employer not to do so is not a protected activity and that an employer who dismisses a striking employee under these conditions is not engaging in an unfair labor practice.[3] See NLRB v. Sands Mfg. Co., 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682 (1939); Artim Transportation System, Inc. v. NLRB, 396 F.2d 359 (7th Cir. 1968); International Union, UMW v. NLRB, 103 U.S.App.D.C. 207, 257 F.2d 211 (1958); cf. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). The controlling question presented in the present case is whether the Board decision that the strike was in violation of such an agreement on the part of petitioner's Union [4] has been reached in a manner sustainable upon this review.

In 1964 the Company and the Union entered into a written collective bargaining agreement governing the conditions of employment. The expiration date of the agreement was April 8, 1967, except that under its terms it was thereafter to continue on a year to year basis unless either party served written notice 60 days prior to April 8 of a desire to terminate or modify it. The Union gave

1. 29 U.S.C. § 158(a)(1).

2. 29 U.S.C. § 158(a)(3).

3. Petitioner, however, does argue for an exception where the contract is not for a definite term. We agree with the Board in not accepting this position.

4. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 197.

such notice prior to April 8, 1967. Another provision of the agreement was the following:

> During the term hereof the Union agrees that there shall be no strike or any other interference with or interruption of the normal conditions of the Employer's business by the Union or its members. The employer agrees that there shall be no lockout.

Negotiations for a new agreement began before April 8, 1967, and extended beyond that date. It was during these negotiations that the no-strike agreement, as found by the Board, was made. The membership of the Union, however, after rejecting various proposals including a "final offer" of the Company, became impatient with the progress of the negotiations. The membership voted to strike beginning May 21, 1967. The Trial Examiner's conclusion, adopted by the Board, was that the vote was designed to give additional weight to the bargaining position of the Union negotiators and that it was understood among the membership that there would be no strike until a bargaining impasse had been reached and a decision to strike was authorized by the Union's international affiliate. Nevertheless, a majority of the members, including the eight discharged and the 165 disciplined, did strike May 21 and stayed out until May 28, and for this activity on their part the discharges and disciplinary action followed. The strike occurred over the strenuous objection of the Union representatives engaged in bargaining with the Company at the time.

The principal dispute is whether the understanding between the Company and the Union negotiators was simply that if the Union decided to strike there would be no retroactive application of any wage increase ultimately agreed upon, in which case the right to strike, though prohibited by the expired written agreement, was left unimpeded; or, on the other hand, whether the Union, through

extending the terms of the expired agreement, made an affirmative commitment not to strike unless there was a bargaining impasse and a strike was authorized by the Union itself. The Board resolved this dispute, on the basis of an evidentiary record not summarized here, in favor of the latter interpretation, concluding that the terms of the written agreement, including its no-strike provision, had been extended by the Union and the Company for a period which had not ended when the strike occurred. More precisely the Board found:

> In consideration for such wage retroactivity, as evidenced by the credited testimony of the various bargaining representatives of both the Respondent and the Union and demonstrated by the Respondent's action in continuing to respect all phases of the contract, including checkoff and payments into the health and welfare fund, the parties proceeded on the understanding that all provisions of the existing contract would be kept in effect until such time as a new contract was agreed upon or the Union decided to end negotiations and seek other means of achieving its economic demands.

■ The evidence as to whether there was an agreement in those terms is not without ambiguity, especially when the record is considered in light of the importance of the right to strike as emphasized by Section 13 of the Act, 29 U.S.C. § 163. We conclude, however, that on the record as a whole there is substantial evidence to support the Board's position. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Consequently the strike, in violation of the agreement, we hold was unprotected activity and the Company's actions complained of did not constitute unfair labor practices. Upon this basis the petition for review of the Board's order dismissing the complaint is

Denied.